**NO. 25-1095**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## In re: ABTIN VAZIRI.

------------------------------

## ABTIN VAZIRI,

*Debtor - Appellee,*

**v.**

## CYRUS AMIRI,

*Creditor - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

_____

## CORRECTED BRIEF OF APPELLANT

_____

**Robert S. Brandt**
**LAW OFFICE OF ROBERT S. BRANDT**
**600 Cameron Street**
**Alexandria, VA  22314**
**(703) 342-7330**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-1095_    Caption: _Abtin Vaziri v. Cyrus Amiri   (per docket. Vaziri never pltf or aplnt)_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Abtin Vaziri_
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

   1. No committee
   2. Debtor: Abtin Vaziri
   3. n/a

7. Is this a criminal case in which there was an organizational victim?  ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Daniel M Press                     Date:         3/3/2025

Counsel for: Appellee/Debtor

[ Print to PDF for Filing ]

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ....................................................................... ii

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES PRESENTED .................................................1

STATEMENT OF THE CASE.....................................................................2

SUMMARY OF ARGUMENT...................................................................5

ARGUMENT ..............................................................................................5

      I.     Standard of review as to all assignments of error ...............................5

      II     The Bankruptcy Court abused its discretion in failing to find
           that the bankruptcy petition was filed by the Debtor in bad faith
           and thus should have been dismissed.....................................................7

           The findings of fact made by the bankruptcy court were clearly
           erroneous ...............................................................................................7

           The legal conclusion drawn by the bankruptcy court was also in
           error and was an abuse of its discretion ..............................................11

           The Bankruptcy Court clearly erred in approving the
           bankruptcy plan ...................................................................................16

CONCLUSION.........................................................................................18

STATEMENT REGARDING ORAL ARGUMENT.................................18

CERTIFICATE OF COMPLIANCE.........................................................19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

<u>Anderson vs. Bessemer City</u>,
   470 U.S 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) ................................6

<u>Direx Isreal, Ltd. v. Breakthrough Medical Corp.</u>,
   952 F.2d 802 (4th Cir. 1991)...........................................................................7

<u>Green vs. Staples (In re Green)</u>,
   934 F.2d 568 (4th Cir. 1991) ...........................................................................6

<u>In re Asamoah</u>,
   No. 21-11888-BFK (Bankr. E.D. Va. Mar. 29, 2022).............................. 14-15

<u>In re Bryson Properties</u>,
   961 F.2d 496 (4th Cir. 1992).........................................................................5, 6

<u>In re Colston</u>,
   539 B.R. 738 (Bankr. W.D. Va. 2015) ............................................................16

<u>In re Love</u>,
   957 F.2d 1350 (7th Cir. 1992)....................................................................12, 13

<u>In re Solomon</u>,
   67 F.3d 1128 (4th Cir. 1995).........................................................................12

<u>In re Uzaldin</u>,
   418 B.R.166 (Bankr. E.D. Va. 2009) ..............................................................13

<u>In re Wentz</u>,
   Bankr. E.D. Va, Alexandria Division, 24-11197-BFK ...................................15

<u>In re White</u>,
   542 B.R. 762 (Bankr. E.D. Va. 2015) ............................................................14

<u>In re Willner</u>,
   Case No. 19-13661-BFK (Bankr. E.D. Va. Feb. 19, 2020) ...........................12

James v. Jacobson,
    6 F.3d 233 (4th Cir. 1993) ............................................................6

Kestell v. Kestell (In re Kestell),
    99 F.3d 146 (4th Cir. 1996) ......................................................12

Marrama v. Citizens Bank of Massachusetts (In re Marrama),
    127 S. Ct. 1105, ___ U.S. ___, 166 L. Ed. 2d 956 (2007) ...........15

Neufeld v. Freeman,
    794 F.2d 149 (4th Cir. 1986) ....................................................12

Tavenner v. Smoot,
    257 F.3d 401 (4th Cir. 2001) ....................................................15

**Statutes:**

11 U.S.C. § 1307(c) ...............................................................................17

11 U.S.C. § 1307(c)(1) ..........................................................................12

11 U.S.C. § 1307(c)(6) ..........................................................................12

11 U.S.C. § 1325(a) ...............................................................................12

11 U.S.C. § 1325(a)(3) ..........................................................................12

11 U.S.C. § 1325(a)(7) ...............................................................12, 16, 17

28 U.S.C. § 158(d)(1) ..............................................................................1

## <u>JURISDICTIONAL STATEMENT</u>

This Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. Section 158(d)(1).

This case arises from a confirmation order involving a chapter 13 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division. The subject of this appeal is the Bankruptcy Court's Confirmation Order entered on February 2, 2024 (the "Confirmation Order") (JA188) over the objection of the Appellant.

The Appellant appealed the Confirmation Order to the United States District Court for the Eastern District of Virginia. The District Court affirmed the ruling of the Bankruptcy Court on the ground that the Bankruptcy Court did not abuse its discretion in refusing to dismiss the Debtor's case on bad faith grounds (the District Court Order) (JA191).

The Appellant then timely appealed the District Court's ruling upholding the Order of the Bankruptcy Court to this Court by filing a timely notice of appeal.

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Did the Bankruptcy Court commit reversible error by drawing the legal conclusion that the Debtor's case was not filed in bad faith despite the evidence pointing to the contrary?

**2.** Did the Bankruptcy Court commit reversible error in drawing the conclusion that the bankruptcy case could not have been filed in bad faith by the Debtor because the Debtor was proposing a 100 percent plan?

## STATEMENT OF THE CASE

On May 29, 2023, the Appellee, Abtin Vaziri (hereinafter "the Debtor"), filed a chapter 13 bankruptcy petition with the Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (JA6). The Debtor's bankruptcy schedules disclosed on Official form 122C-1 (hereinafter "the means test) that Debtor had gross annual income of $143,012.04 (JA54). The Debtor's means test, line number 45 of the form, revealed that the debtor had a monthly disposable income of $3,076.00 available for distribution to his unsecured creditors (JA62). The debtor disclosed on the means test form that his only source of income was his salary from Dulles Motorcars (JA64).

Also on May 30, 2023, the Debtor filed his first chapter 13 plan with the Court (JA73). Rather than proposing plan payments of at least $3,200 per month that would allow for payments to unsecured creditors at least $3,076.00 per month the Debtor instead proposed plan payments of $2,500 per month for 60 months. Since the proposed plan was proposing payments that were less than what Debtor had shown his disposable income to be it was met by a good faith objection by the chapter 13 trustee ("the Trustee") assigned to the case (JA87). The trustee's

objection filed on July 19, 2023 noted that the plan was not filed in good faith since the plan proposed payments of only $2,500 per month. The plan was denied confirmation with leave to amend.

On September 8, 2023, the Debtor filed his second plan with the bankruptcy court (JA90). This time the Debtor proposed payments of $2,500 per month for 14 months, followed by payments of $3,200 per month for 46 months. The plan proposed a payout of 73 cents on the dollar rather than 60 cents on the dollar which was proposed by the Debtor in his first plan. The plan was again met by an objection by the Trustee on October 18, 2023(JA106). The Trustee objected to the plan on good faith grounds noting that the debtor had over $3,000 in monthly disposable income, per his own schedules, and yet was proposing payments of only $2,500 per month for the first 14 months. Moreover, on October 4, 2023, the Appellant, a creditor of the debtor ("the Creditor"), also filed an objection to confirmation arguing that the plan does not appear to commit the debtor's entire disposable income and questioning the accuracy of the debtor's schedules (JA104). The Creditor further argued that if the Debtor actually wanted to he could easily propose and fund a 100 percent plan. In light of these objections the Debtor agreed once again to have his plan denied confirmation.

On November 30, 2023, the Debtor filed his third plan (JA109) which proposed to pay his unsecured creditors in full and offered to pay, over the course

of five years, a total amount of $253,900. The Debtor's plan once again provided for stepped-up payments over the life of the plan, and projected that in the final 42 months of the plan the Debtor would pay $4,730 per month.

On December 20, 2023, The Creditor filed a motion to dismiss the debtor's case with prejudice (JA123). In the final paragraph of the creditor's motion to dismiss the Creditor argued that the debtor's schedules were not accurate, that the schedules had some material misstatements, and that the debtor's petition was inaccurate when it was filed.

On January 18, 2024, the parties appeared before the Court so that the Creditor could be heard on his motion to dismiss (JA131). The Court then heard the arguments from counsel for the Creditor. Once the Creditor concluded his arguments the bankruptcy court ruled orally from the bench that the motion to dismiss would be denied because the Debtor had proposed a 100 percent plan.

On January 24, 2024, The Creditor filed an objection to the third plan proposes by the debtor (JA166). The parties appeared before the bankruptcy court on February 1, 2024 for the confirmation hearing of debtor's plan (JA182). Counsel for the Creditor presented arguments as to why the plan should not be confirmed and why the case should be instead dismissed. The debtor was not required to testify in support of the confirmation of his plan. The court merely relied on the arguments of counsel for the Debtor and confirmed the plan (JA188).

A timely appeal was filed with the District Court which subsequently found no fault with the ruling of the Court. The Creditor then appealed to this Honorable Court.

**SUMMARY OF ARGUMENT**

The Bankruptcy Court committed reversible error by misconstruing the evidence with which it was presented. In failing to appreciate the gravity of the Debtor's bad faith and in choosing to frame the evidence in a fashion with which the evidence did not present itself it committed error. Second, in choosing to all but invoke a per se rule that essentially barred debtors chapter 13 cases from being dismissed so long as they were proposing 100 percent plans it committed its second error. The Bankruptcy Code does not give a pass to those playing fast and loose with the Bankruptcy Code merely because they propose a 100 percent plan. Finally, by endorsing the confirmation of the Debtor's plan without requiring the Debtor to prove that he filed his case and his plan in good faith it once again committed an error of law.

**ARGUMENT**

**I.     Standard of review as to all assignments of error.**

This Court reviews the district court's decision de novo. In re Bryson Properties, 961 F.2d 496, 499 (4th Cir. 1992).

5

The Court reviews the bankruptcy court's finding of fact only for clear error. Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definitive and firm conviction that a mistake has been committed." Green vs. Staples (In re Green), 934 F.2d 568, 570 (4th Cir. 1991). The Supreme Court has explained: If the lower court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson vs. Bessemer City, 470 U.S 564, 573-74, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985).

The Court reviews the bankruptcy court's conclusion of law de novo. See In re Bryson Properties, 961 F.2d at 499.

The appellate court reviews a bankruptcy court's denial of a motion to dismiss for abuse of discretion. The Court explained in James v. Jacobson, 6 F.3d 233 (4th Cir. 1993) that while "abuse of discretion" is a familiar concept, it is not necessarily that simple in its application. Abuse of discretion can occur in a number of ways. One way that a court can abuse its discretion is by its failure, either expressly or implicitly, to actually to exercise its discretion, deciding instead by a general rule. Another way that a trial court can abuse its discretion is if the

6

court fails to take relevant facts constraining its exercise of discretion into account. After all, discretion must be exercised under the relevant standard prescribed by the court. Finally, a court may be deemed to abuse its discretion if its decision is based on erroneous conclusions of law or facts.

When reviewing discretionary determinations affecting substantive rights of a party, we should argue that the former standard is correct; the latter view of the court's role in reviewing "discretionary" decisions is appropriate only in merely procedural decisions. Review of substantive decisions requires that appellate courts apply "not a rule of perfunctory appellate review but one of careful scrutiny." <u>Direx Isreal, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 815 (4th Cir. 1991)

## II  <u>The Bankruptcy Court abused its discretion in failing to find that the bankruptcy petition was filed by the Debtor in bad faith and thus should have been dismissed</u>.

<u>The findings of fact made by the bankruptcy court were clearly erroneous.</u>

The Bankruptcy Court did not make any "official" finding of fact, but nonetheless articulated its findings as follows (JA154):

> "Here's what I. I see a debtor who has lots of skeletons in his closet. And I understand your comments about the U.S Trustee being all over this if this were a chapter 7. I think you're absolutely right. But this isn't a chapter 7 case. It's a chapter 13 case.
> And what I'm presented with is a debtor who has demonstrated extremely bad judgment in his financial life. Obviously, if I believe what you say – and I don't disbelieve you – he has a gambling problem."

7

In making these findings of fact the Court committed clear error. The Creditor did not argue to the Bankruptcy Court that the Debtor had a lot of "skeletons in his closet" and that those skeletons should result in a finding of bad faith and dismissal. The Creditor did not argue to the Bankruptcy Court that the Debtor had demonstrated "extremely bad judgment in his life" and thus the Cout should find bad faith in that and dismiss. The Creditor did not argue to the Bankruptcy Court that Debtor merely had a "gambling problem" which must be equated with bad faith and dismissal. This was not the evidence that was presented to the Court by the Creditor in his quest for dismissal. Instead, what the Creditor argued to the Bankruptcy Court was that the Debtor had repeatedly lied when submitting his bankruptcy schedules to Court. The Creditor first tried the subtle approach when he filed his objection to confirmation (JA104) and noted that "the debtor's plan and schedules appear to suffer from certain omissions and are not entirely accurate." That sentiment was repeated more loudly when the Creditor filed his motion to dismiss (JA126). Finally, on January 18, 2024, when the parties appeared before the bankruptcy court and the Creditor was given the opportunity to make his case as to why the Debtor's case should be dismissed the Creditors proffered the following evidence to the Court: The Creditors advised the bankruptcy court that there were some massive inaccuracies in the schedules (JA135). The Creditor then proceeded to bring to the Court's attention the following: that the Debtor had all

but made up his living expenses on schedule J by embellishing certain expense like his housing expenses, and failing to capture other real expenses in an accurate fashion like his entertainment expenses -his gambling- (JA146), by lying on his Statement of Financial Affairs and not disclosing his gambling winnings (JA147), by lying on his means test when he disclosed his income from his employment only, (JA64) while failing to disclose the thousands and thousands of dollars that were deposited into his bank account during the six months preceding the bankruptcy filing (JA148), by failing to disclose in the Statement of Financial Affairs the roughly $70,000 in deposits that he took in during 2022 and then some $40,000 of deposits in 2023 (JA148), for failing to disclose payments made to creditors during the 90 day preceding the bankruptcy filing, for failing to list all his creditors (JA149), for failing to disclose his gambling loses during the one year preceding his bankruptcy filed when responding to the Statement of Financial Affairs (JA149), and for lying on question number 18 of the Statement of Financial Affairs and not disclosing the sale of his former martial home that occurred during the two years preceding the bankruptcy filing (JA150). In short, the Creditor sought the dismissal of the Debtor's case because he lied about his income, because he fabricated his expenses, because he failed to truthfully list all his creditors, and because he lied repeatedly on a number key questions posed on the Statement of Financial Affairs (JA42-48).

In addition, while the Debtor showed $3,076 per month in disposable income available for distribution to the unsecured creditors (based on Debtor's own false means test that he presented to the Court) the Debor, rather than proposing a payment plan with payments of $3,200 per month submitted a payment plan with payments of $2,500 per month in order to "test the waters." Such conduct was a further indication of bad faith (JA151).

In addition, the Creditor argued to the Court that while the Debtor was "claiming poverty," while the Debtor in his responsive pleading was giving the Court a whole song and dance about getting back on his feet, about having to pay taxes, about an older car, and about medical expenses, that the Debtor was in fact lying. The Creditor at the hearing advised the Court (JA153) that in reality post-petition that the Debtor was spending a massive amount of money on gambling. And then, in the summer of 2023 the Debtor was spending a great deal of money on travel and you see "extravagant spending during these months post-petition." And the pattern of substantial deposits that have nothing to do with the Debtor's paychecks continue (JA154). "And the spending in tremendous."

As such, there was no evidence to support the finding of facts that the bankruptcy court made. The bankruptcy court committed a mistake.

<u>The legal conclusion drawn by the bankruptcy court was also in error and was an abuse of its discretion</u>.

The legal conclusion drawn by the Bankruptcy Court in making its decision that the Debtor's case was not filed in bad faith, and that the case should not be dismissed were as follows:

> "I don't see bad faith here with this Chapter 13 case, because I'm going to be presented with a one-hundred percent repayment plan. So I'm going to give this debtor every opportunity to do what he's claiming he can do. And everything you said doesn't belie that. It appears that this debtor can afford this one-hundred percent repayment plan (JA155)."

In other words, what the bankruptcy court was saying was as follows: Your allegations (Mr. Creditor) that the Debtor filed his bankruptcy petition in bad faith are irrelevant to me because the debtor is proposing a 100 percent plan. The fact that he took certain liberties on his schedules, made omissions, mischaracterized his income, and failed to disclose certain critical information about his financial affairs is not relevant because the Debtor is proposing a 100 percent plan. The filing of a 100 percent plan trumps negates the possibility of the Court finding bad faith. Moreover, it appears that the proposed plan is feasible, and that the Debtor can in fact pay his creditors back in full and as such the Court is confident that the Debtor can achieve what he has set out to do-pay back his creditors in full.

In drawing this legal conclusion, the court committed reversible error.

Even going as far back as nearly 30 years ago, the Court in this circuit noted that:

> Good faith is also necessary for a Chapter 13 plan to be confirmed under section 1325(a). In re Solomon, 67 F.3d 1128 (4th Cir. 1995); Neufeld v. Freeman, 794 F.2d 149 (4th Cir. 1986). That section provides that plans may be confirmed only if "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §(s) 1325(a)(3).
>
> Additionally, under section 1307, bankruptcy petitions filed under Chapter 13 may be dismissed or converted to Chapter 7 "for cause." Reasons constituting "cause" for dismissal include enumerated ones, such as unreasonable and prejudicial delay by the debtor or material default by the debtor, 11 U.S.C. §(s) 1307(c)(1), (6), as well as judicially construed ones such as bad faith, In re Love, 957 F.2d 1350 (7th Cir. 1992).

Kestell v. Kestell (In re Kestell), 99 F.3d 146, 148 (4th Cir. 1996)

Every bankruptcy case carries with it an obligation of good faith. 11 U.S.C Section 1325(a)(7). In re Willner, Case No. 19-13661-BFK (Bankr. E.D. Va. Feb. 19, 2020) The word "every" means just what it states. The word "every" does not provide for an exception. Congress did not create an exception for chapter 13 cases that pay out 100 percent to the creditors. As for the definition of bad faith, no such precise definition exists. "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal of the plan." It is the contention of the Creditor that there has indeed been an abuse of the provisions, purpose, or spirit of

12

this Chapter 13 case. As the bankruptcy court explained in In re Uzaldin, 418

B.R.166 (Bankr. E.D. Va. 2009):

> In determining whether a chapter 13 petition was filed in bad faith, the Fourth Circuit follows the factors discussed in In re Love, 957 F.2d 1350 (7th Cir.1992). The test for bad faith looks to the totality of the circumstances and contains both objective and subjective components.
>
> The underlying [bad faith] inquiry is based on fundamental fairness. The non-exhaustive list of the factors includes: the nature of the debt; whether the debt would be non-dischargeable in a chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; <u>the debtor's treatment of creditors before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.</u>

Not only is it abundantly clear from the record that the Debtor has not been

forthcoming with the bankruptcy court and the creditors, but the debtor's treatment

of the creditors after the petition was filed leaves much to be desired. As a further

indication of the Debtor's bad faith, the Debtor did not submit a traditional 100

percent plan -one without any step-up payments- right out of the gate when he filed

his first plan. He did not even submit all of his disposable income per his own false

means test when he filed his first chapter 13 plan. Rather, he "low-balled" the first

plan hoping that the $2500 per month payments would suffice and/or that the

Trustee of the creditors would not notice. It was only when he was dragged kicking

and screaming, after several objections to confirmations that he finally

acknowledges his faith and submitted to a 100 percent plan, albeit one that still put

creditors in a tenuous position due the significant step-up payment build into the

plan. The bankruptcy courts have seen this type of "testing the waters" before

finally begrudgingly submitting a 100 percent plan in the now infamous case of In

re White, 542 B.R. 762 (Bankr. E.D. Va. 2015). It bears repeating, not only was

the Debtor "forced" into filing a 100 percent plan, but the pleadings filed by the

Debtor and the arguments presented to the Court about his income not quite being

were it should be, that he was just coming off the heals of a garnishment, that he

had an older car that needed extensive work, and that he could not spare more

payments to the creditors for the first year or so of the plan because he had a tax

obligation that he would have to meet after he filed his bankruptcy case, was in

stark contradiction of the lavish lifestyle that the Debtor was living not only before

he filed his case, but during the many months after he filed for bankruptcy.

As for the almost explicit notion "no harm, no foul" rule was appropriate in

100 percent plans, which the Bankruptcy Court in this case certainly espoused

when it stated: "So you want me to dismiss this case, where the debtor is offering

to pay all creditors at a hundred cents on the dollar?.....Just because there are errors

on the schedules?" (JA135 and JA136), it was error for the Court to draw this legal

conclusion. Not only does the Code not provide an exception for debtors who

eventually succumb to a 100 percent plan, but it is clear that the courts do not

condone this behavior. See for instance In re Asamoah, No. 21-11888-BFK (Bankr.

E.D. Va. Mar. 29, 2022) (Imposing a 100% plan requirement carries with it the risk that the Court could be seen as countenancing a "no harm, no foul" approach, which is does not. <u>See</u> <u>Tavenner v. Smoot</u>, 257 F.3d 401, 407 (4th Cir. 2001))

Bankruptcy Courts have dismissed chapter 13 cases with prejudices even where the errors in the bankruptcy schedules appear to be relatively minor. <u>See</u> <u>In re Wentz</u>, Bankr. EDVA, Alexandria Division, 24-11197-BFK (a case decided one week ago) where the court dismissed the chapter 13 case from refiling for a period of 90 days merely because the debtor omitted a few bank accounts and retirement accounts/pensions that ultimately would not have changes the outcome of the case. The Court admonished the debtor in Wentz for not taking her "disclosure obligations seriously in this case."

In <u>Marrama v. Citizens Bank of Massachusetts (In re Marrama)</u>, 127 S. Ct. 1105, ___ U.S. ___, 166 L. Ed. 2d 956 (2007) the Supreme Court did not articulate precisely define what conduct qualified as "bad faith" sufficient to deny a voluntary motion to convert, it noted that such conduct by the debtor needed to be atypical and extraordinary. The Bankruptcy Court all but conceded in its ruling that if the Debtor had filed a chapter case 7 with the patently false schedules that the Debtor filed his chapter 13 schedules his discharge would be in jeopardy. The Court made this admission because it knew that the schedules before it were far from typical.

15

Finally, it should be noted that the arguments presented by the Creditor are not merely meant as philosophical pronouncements, and that the harm to the Creditor in this decision is not merely academic. Chapter 13 debtors are notorious for not getting to the finish line and having their cases dismissed for payment default after confirmation. In addition, it also not unheard of for a debtor to begin his bankruptcy case as a chapter 13 and then, due to a job loss for instance, convert to a chapter 7 thereby ensuring that the creditors get nothing. That is to say, there is no guarantee that the Credito in this case will actually get paid over the course of five years. Moreover, unsecured creditors are placed at the back of the line when it comes to receiving distribution from the chapter 13 trustee. Administrative expenses, secured creditors, and priority creditors are first in line. As for the unsecured creditors, they are paid pro rata; smaller creditors get paid in dribs and drabs. Bottom line, there is a price to pay if you are a small unsecured creditor involved in a chapter 13 case and your payment is far from guaranteed.

The Bankruptcy Court clearly erred in approving the bankruptcy plan.

As the bankruptcy court explained in In re Colston, 539 B.R. 738 (Bankr. W.D. Va. 2015) it is the debtor that has the burden of proving that his chapter 13 petition was filed in good faith under Section 1325(a)(7). The Bankruptcy Court was required to find that the plan was "proposed in good faith" and also that "the action of the Debtor in filing the petition was in good faith." In Colston the Court

16

stated that "While limited guidance exists on what a debtor must prove to obtain confirmation under Section 1325(a)(7), the standards used in Section 1307(c) good faith analysis are helpful." Under 1307(c) the bankruptcy courts take into consideration, among other factors, the debtor's treatment of creditors after the petition was filed and whether the debtor has been honest with the bankruptcy court and the creditors. As previously articulated, the Debtor begrudgingly has treated his creditors well in finally filling a 100 percent plan and his been far from transparent with the Court to put it very mildly. The Debtor filed a scathing objection to confirmation (JA166). The Debtor's response (JA172) filed with the Court could be summarized as "stop bothering me with these minor and inconsequential errors, this is a 100 percent plan, don't you get it?!" Finally, at the confirmation hearing that lasted less than three minutes the Bankruptcy Court brushed aside any concern about the plan being filed in bad faith or the petition not being filed in bad faith, concluding simply "That's what I see. Just a rehashing. I find that this case was filed in good faith. And as all creditors are being paid at one hundred cents on the dollar, I'm going to overrule your objection." In drawing the legal conclusion that the case was filed in good faith the court erred." And in creating a per se rule that a 100 percent plan can never be denied confirmation or dismissed the court again committed error.

17

## **CONCLUSION**

A bankruptcy discharge, even one in the context of a chapter 13 case that proposes a 100 repayment plan is a privilege and not a right. Given the Debtor's conduct the Debor has forfeited this privilege. In short, he is not "the honest, but unfortunate debtor." The ruling of the Bankruptcy Court should be reversed

## **STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is not necessary. The record and the case law speaks for itself.

Respectfully submitted,

/s/Robert S. Brandt
Robert S. Brandt
LAW OFFICE OF ROBERT S. BRANDT
600 Cameron Street
Alexandria, VA  22314
(703) 342-7330

*Counsel for Appellant*

18

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with type-volume limits because, excluding the

parts of the document exempted by Fed. R. App. P. 32(f) (cover page,

disclosure statement, table of contents, table of citations, statement regarding

oral argument, signature block, certificates of counsel, addendum,

attachments):

This document contains <u>4,420 words</u>.

2.      This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface
using Microsoft Word in <u>14-point Times New Roman</u>.

Respectfully submitted,

<u>/s/Robert S. Brandt</u>
Robert S. Brandt
LAW OFFICE OF ROBERT S. BRANDT
600 Cameron Street
Alexandria, VA  22314
(703) 342-7330

*Counsel for Appellant*